Stephen C. YOHAY, Plaintiff-Appellee,

v.

CITY OF ALEXANDRIA EMPLOYEES CREDIT UNION, INC., Defendant & Third Party Plaintiff-Appellee (Two Cases).

The CREDIT BUREAU, INC. a/k/a The Credit Bureau Incorporated of Georgia, Defendant,

v.

Patricia RYAN, Third Party Defendant-Appellant (Two Cases).

Stephen C. YOHAY, Plaintiff-Appellee,

v.

CITY OF ALEXANDRIA EMPLOYEES CREDIT UNION, INC., Defendant & Third Party Plaintiff-Appellant (Two Cases).

The CREDIT BUREAU, INC. a/k/a The Credit Bureau Incorporated of Georgia, Defendant,

v.

Patricia RYAN, Third Party Defendant-Appellee (Two Cases).

Nos. 86–1075, 86–1080, 86–1204 and 86–1205.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 8, 1987.

Decided Aug. 26, 1987.

Bernard J. DiMuro (Hirschkop & Associates, P.C., Alexandria, Va., on brief), for third party defendant-appellant Ryan and third party defendant-appellee Ryan.

F. Joseph Nealon (Miles & Stockbridge, Washington, D.C., on brief), for defendant & third party plaintiff-appellant Credit Union and defendant & third party plaintiff-appellee Credit Union.

Jeffrey Rosenfeld (Falcone & Rosenfeld, Ltd., Fairfax, Va., on brief), for plaintiff-appellee Yohay.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

FRANK A. KAUFMAN, Senior District Judge:

On July 26, 1983, Patricia Ryan (Ryan), an attorney on retainer with the City of Alexandria Employees Credit Union (Credit Union) in connection with the collection of delinquent accounts and other matters, either used, or caused an employee of the Credit Union to use, the Credit Union's computer to obtain information from the Credit Bureau of Georgia, Inc. (CBI), with whom the Credit Union had a contract and a computer tie, concerning Ryan's ex-husband, Stephen Yohay (Yohay). At the time of the incident in question, Ryan and Yohay were engaged in a state court custody trial concerning their son. Prior to the incident in question, Yohay's second wife had brought an assault charge against Ryan of which Ryan had been acquitted. Furthermore, according to Ryan, Yohay had accused Ryan of charging gasoline to one of Yohay's credit cards. Ryan had remarried Arlen Justice (Justice), Secretary-Treasurer of the Credit Union and Deputy Chief of Police for the City of Alexandria, who had introduced Ryan to the Credit Union's Board of Directors before Ryan was placed on a retainer by the Credit Union.

At the trial of the within cases, Ryan testified that she had sought information from CBI regarding Yohay's credit in order to compare the numbers of Yohay's credit card accounts with their earlier established joint credit card accounts to ensure that Yohay was no longer using those previously established joint credit arrangements. Also during the trial, Andrea Martin, the Credit Union's assistant manager, testified that Donna Hatton, an employee of the Credit Union, had told her (Martin) that she (Hatton) had obtained the credit report on Yohay from CBI at the request of George Filopovich, the Credit Union's manager and a friend of Justice.

The Credit Union had a contract with CBI permitting the Credit Union to obtain credit information from CBI for appropriate purposes. The trial testimony revealed that the Credit Union had posted no rules or guidelines concerning the running of credit checks and that seemingly anyone, who could obtain physical access to the computer on the Credit Union's premises, could access CBI's files for any reason.

Yohay first became aware that CBI had furnished credit information to the Credit Union when Yohay obtained from CBI a copy of his credit records in March, 1984. Those records revealed that a credit check of Yohay had been run by the Credit Union on July 26, 1983. Since Yohay had had no relationship with the Credit Union, Yohay wrote a letter to the Credit Union inquiring as to the reason for the credit check. The president of the Credit Union, in responding to such inquiry, informed Yohay that the Credit Union had run the check at the request of Ryan.

Yohay filed the within action against the Credit Union pursuant to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, seeking punitive damages, costs, and attorneys' fees, but not seeking compensatory damages.[1] The Credit Union filed a third-party complaint against Ryan for indemnification.

Prior to or during the jury trial, the district court ruled as a matter of law or as a matter of undisputed fact, as follows: (1) that "on or about July 26, 1983, Patricia Ryan, using the facilities of the defendant, City of Alexandria Employees Credit Union, obtained a consumer report regarding Stephen Yohay from CBI, a consumer reporting agency, for a purpose not permitted by the Fair Credit Reporting Act";[2] (2) that Ryan had acted as an employee and an agent for the Credit Union within the scope of her employment and agency in obtaining the information about Yohay from CBI;[3] (3) that punitive damages could be awarded to Yohay by the jury against the Credit Union if the jury found that the Credit Union's failure to comply with the Act had been "willful," that is, if the Act had been violated "voluntarily and intentionally, and

---

1. Yohay also originally named CBI as a defendant in these cases. However, that claim was subsequently dismissed by agreement of Yohay and CBI.

2. App. 559–60.

3. App. 217.

not because of negligence, mistake, accident or other innocent reason"; [4] (4) that to award punitive damages under the Act, the jury "need not find that the Credit Union acted with malice or bad intention"; [5] and (5) that the Credit Union was entitled as a matter of law to indemnification from Ryan for any damages awarded in these cases by the jury to Yohay against the Credit Union.[6]

In effect, the only factual questions presented to the jury by the district court were (1) whether the Credit Union had acted willfully and, if so, (2) the amount of punitive damages to be awarded to Yohay against the Credit Union. The jury awarded Yohay $10,000 for punitive damages. The trial court subsequently granted, in part, Yohay's petition for attorney's fees and costs against the Credit Union. The trial court also ordered that Ryan indemnify the Credit Union for (1) the award of punitive damages to Yohay; (2) the award of attorney's fees and costs to Yohay; and (3) the attorney's fees incurred by the Credit Union in defending itself against Yohay's claim.

In the within appeals, the Credit Union and Ryan assert numerous errors by the court below. For reasons which will be discussed herein, we conclude that each of those challenges is without merit.

## HEARSAY

■ Over the objection of counsel for the Credit Union, the district court permitted Andrea Martin, the assistant manager of the Credit Union, to testify that Donna Hatton, an employee of the Credit Union, had told Martin that she (Hatton) had obtained the credit information respecting Yohay from CBI at the request of George Filopovich. The statement which Martin testified was made by Hatton to Martin was a statement "concerning a matter within the scope of ... [Hatton's] employment, made during the existence of the relationship," and therefore is not hearsay. Fed.R.Evid. 801(d)(2)(D). Part of the said statement which was made by Hatton to Martin included a statement made by Filo-

povich to Hatton. That statement by Filopovich also concerned a matter within the scope of the employment of Filopovich. The fact that Martin testified that Hatton had told Martin what Filopovich had said provides no basis for exclusion. *Cf.* Federal Rule of Evidence 805 which negates exclusion "if each part of the combined statements conforms with an exception to the hearsay rule." Accordingly, the district court did not err in admitting the testimony of Martin concerning those statements.

## THE FAIR CREDIT REPORTING ACT

In enacting the Fair Credit Reporting Act (FCRA), Congress stated:

It is the purpose of this [Act] to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this [Act].

15 U.S.C. § 1681(b).

The Act also provides:

A consumer reporting agency may furnish a consumer report under the following circumstances and no other: (1) In response to the order of a court having jurisdiction to issue such an order. (2) In accordance with the written instructions of the consumer to whom it relates. (3) To a person which it has reason to believe—(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or (B) intends to use the information for employment purposes; or (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or (D) intends to use the information in connection with a

---

4. App. 561–62.

5. App. 563.

6. App. 263.

determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or (E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

15 U.S.C. § 1681b.

The Act includes two sections which expressly create civil liability, 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. Section 1681n provides as follows:

Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this [Act] with respect to any consumer is liable to that consumer in an amount equal to the sum of—(1) any actual damages sustained by the consumer as a result of the failure; (2) such amount of punitive damages as the court may allow; and (3) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Section 1681o states:

Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

The Act also provides for criminal liability in certain circumstances:

Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both.

15 U.S.C. § 1681q.

## CIVIL LIABILITY

The Credit Union and Ryan were "user[s] of information" obtained from CBI, "a consumer reporting agency." *See* 15 U.S.C. § 1681a(f) and § 1681n. *See* discussion *infra* at 973–974. As such, if either the Credit Union or Ryan "willfully fail[ed] to comply with any requirement imposed" by the FCRA, each is liable to the "consumer"—in these cases Yohay—for actual and punitive damages as well as costs and attorney's fees. *See* 15 U.S.C. § 1681n.

Pursuant to section 1681b, in the absence of a court order, *see* 15 U.S.C. § 1681b(1), or written instructions from the consumer, Yohay, *see* 15 U.S.C. § 1681b(2), or any of the grounds set forth in section 1681b(3)(A–E), inclusive, CBI could not lawfully provide either the Credit Union or Ryan with the information regarding Yohay.

In *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 697 (10th Cir.1980), the Tenth Circuit has taken the position that a person such as Ryan—who, as the district court concluded herein before trial in the context of undisputed facts, obtained from CBI the consumer report in question for purposes not permitted by section 1681b—could not be held civilly liable under section 1681b. Herein, we need not reach that issue because of the view we take with respect to section 1681q.

In *Hansen v. Morgan*, 582 F.2d 1214, 1216 (9th Cir.1978), the Ninth Circuit incorporated the criminal provisions of section 1681q into sections 1681n and 1681o and held that a user who obtains a consumer report under false pretenses, as those words are used in section 1681q, can be civilly liable under either section 1681n or section 1681o. In *Hansen*, Judge Carter wrote that "[t]he standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports which are enu-

merated in 15 U.S.C. § 1681b," *id.* at 1219 (footnote omitted), "that obtaining a consumer report ... without disclosing the impermissible purpose for which the report is desired can constitute obtaining consumer information under false pretenses, and that the facts in this case demonstrate that the consumer report was so obtained." *Id.* at 1219–20 (footnote omitted). We agree with and accordingly adopt the reasoning of the Ninth Circuit in *Hansen*, [7] and also conclude that the facts in these cases before us disclose that the report was obtained under false pretenses.

■ Accordingly, each of the two users—the Credit Union and Ryan—is subject to civil liability under section 1681n if each user's individual non-compliance with section 1681b was willful. In the within cases the record shows that Ryan obtained the report from CBI, as the district court found before trial, for "a purpose not permitted by" the FCRA and also without in any way disclosing to CBI the impermissible purpose for which she sought the report.[8] The trial record discloses more than sufficient evidence to support the jury's implicit conclusion that the Credit Union acted willfully. For example, the evidence of the friendly relationship between the manager of the Credit Union, Filopovich, and Ryan and her second husband, Justice, indicated that Filopovich was cognizant of Ryan's improper purpose.

## PUNITIVE DAMAGES

■ The FCRA specifically provides that punitive damages may be awarded "as the court may allow," 15 U.S.C. § 1681n(2), if the defendant's noncompliance with the provisions of the Act is willful. Actual damages are not a statutory prerequisite to an award of punitive damages under the Act. The award of punitive damages in the absence of any actual damages, in an appropriate case, comports with the underlying deterrent purpose of the FCRA. *See Ackerley v. Credit Bureau of Sheridan, Inc.*, 385 F.Supp. 658, 661 (D.Wyo.1974); *Nitti v. Credit Bureau of Rochester, Inc.*, 84 Misc.2d 277, 375 N.Y.S.2d 817 (N.Y.Sup. Ct.1975). *See generally*, T. Eisenberg, *Debtor-Creditor Law* ¶ 7.11[B][2] at 7–89 (1986). Furthermore, "[p]unitive damages awarded under section 1681n are within the discretion of the court and malice or evil motive need not be found for such an award, but the violation must be willful." *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980). *See also Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986); *Boothe*, 557 F.Supp. at 71–72. The district court correctly instructed the jury that punitive damages may be awarded if the jury found "that the defendant acted under circumstances amounting to willful or wanton disregard of the plaintiff's rights." [9] *See Pinner*, 805 F.2d at 1263. As discussed *supra*, there is considerable evidence in the record to support the jury's implicit finding that the Credit Union consciously ignored the rights of Yohay.[10]

## AGENCY OF RYAN

■ The record supports the district court's determination that there was no

---

**7.** *See Boothe v. TRW Credit Data*, 557 F.Supp. 66, 71 (S.D.N.Y.1982). *See also Rice v. Montgomery Ward and Co., Inc.*, 450 F.Supp. 668, 671 (M.D.N.C.1978). In *Heath* (at 697), the Tenth Circuit, while noting the positions taken in *Hansen* and in *Rice* concerning the relationship of sections 1681b, 1681n, and 1681q, did not reach that issue.

**8.** It is also to be noted that Ryan, in her trial testimony, stated that she acted purposefully and with full knowledge of what she was doing. App. 447–48. In addition, Judge Cacheris' instruction to the jury, App. 559–60, indicates that he had concluded that there was no factual dispute in that regard. Although Judge Cacheris did not include an instruction to the jury which specifically made reference to false pre-

tenses, no such instruction was necessary because Judge Cacheris had informed the jury that the district court had found that the report had been obtained for an impermissible purpose. App. 559–60, 209.

**9.** App. 563.

**10.** The contention of the Credit Union and Ryan that the award of $10,000 in punitive damages was excessive is without merit. Not only did the Credit Union act "willfully" in obtaining the credit information regarding Yohay, but the record discloses that the Credit Union had a sufficient surplus of assets to cover the award of $10,000. Accordingly, the said punitive damage verdict was not disproportionate.

genuine factual dispute that Ryan was an agent of the Credit Union and had apparent authority to obtain the credit report, even if Ryan lacked actual authority so to do. Accordingly, the Credit Union is liable to Yohay for Ryan's wrongful actions as its agent pursuant to the doctrine of respondeat superior. A principal is liable for the acts of an agent who had apparent authority to act regardless of whether the principal either benefited by the acts of the agent or ratified the acts of the agent, if either the plaintiff or a third-party relied upon the principal's representations which created apparent authority. *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566–67, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330, *reh'g denied*, 458 U.S. 1116, 102 S.Ct. 3502, 73 L.Ed.2d 1379 (1982). "Behind the principal's liability under an apparent authority theory, then, is 'business expediency—the desire that third persons should be given reasonable protection in dealing with agents.'" *Id.* 456 U.S. at 567, 102 S.Ct. at 1943, *quoting* Restatement (Second) of Agency § 262, Comment a, p. 572 (1957).

■ Seemingly, anyone who used the Credit Union's computer to access CBI's files appeared—from CBI's perspective—to have authority to gain such access. In that regard it is to be noted that the Credit Union had not posted any guidelines to users of the computer informing them of the circumstances under which such credit information could be obtained. Indeed, the Credit Union had posted the code which provided access to the computer system, enabling anyone with the physical opportunity to use the system to access CBI's files. The record also indicates that the credit check was run by Donna Hatton, an employee of the Credit Union, at the direction of George Filopovich, the manager of the Credit Union. There is little or no question about the apparent, if not the actual, authority of Filopovich to have ordered a credit check from CBI. Accordingly, the Credit Union would be liable to Yohay for Ryan's actions, regardless of whether Ryan had actual or apparent authority to obtain the information about Yohay from CBI.

## INDEMNIFICATION

■ Ryan contends that the Credit Union had no right to indemnification by her because she (Ryan) could not be directly liable to Yohay for a violation of the FCRA because she was not a "user." To begin with, that latter argument is faulty since the term "user" includes "the ultimate destination of a credit report" as well as "the person who acquires [a credit report] for another." *Boothe v. TRW Credit Data*, 557 F.Supp. 66, 71. The Credit Union obtained the information about Yohay from CBI for the purpose of forwarding the same to Ryan. Thereafter, the Credit Union did forward the information to Ryan. Accordingly, Ryan was a "user" and could have been asserted by Yohay to be civilly liable to him pursuant to section 1681n. *Austin v. Bankamerica Service Corporation*, 419 F.Supp. 730 (N.D.Ga.1974), is not to the contrary. In *Austin* the court held that employees, acting within the scope of their employment, were not "users" of consumer credit reports within the meaning of the Act. *Id.* at 734. However, the employees sued in *Austin*—unlike Ryan—had no independent interest in the reports they had obtained on behalf of their employer. To hold that an employee is shielded from liability under the FCRA when he uses the facilities of his employer to obtain a credit report for his own purposes would create a loophole in the statute which does not comport with the aims of the Congress in enacting the FCRA.

■ In any event, Ryan need not be directly liable to Yohay under the Act in order to be obligated to indemnify the Credit Union. "[T]he right of indemnity [rests] upon violation of a duty of care to the injured person...." *Wallenius Bremen G.m.b.H. M/V Martha v. United States*, 409 F.2d 994, 998 (4th Cir.1969), *cert. denied sub nom. United States v. Bremen*, 398 U.S. 958, 90 S.Ct. 2164, 26 L.Ed.2d 542 (1970). Indemnification is warranted in a case, such as the within cases, in which the indemnitor is the "active" or "primary" wrongdoer and the indemnitee is the "passive" or "secondary" wrongdoer. *See White v. Johns-Manville Corp.*, 662

F.2d 243, 249 (4th Cir.1981). Herein, the record discloses substantial evidence that Ryan was the "primary" wrongdoer. The Credit Union obtained the credit information regarding Yohay at the request of Ryan. Also, in asking the Credit Union to obtain such information, Ryan was seemingly acting solely for her own personal reasons. But for Ryan's desire to obtain the report on Yohay, the Credit Union would not have so done. Accordingly, Ryan is liable to the Credit Union for indemnification for the entire amount owed to Yohay by the Credit Union, including punitive damages and attorney's fees.

## ATTORNEY'S FEES AND COSTS

The FCRA provides that "in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court" may be awarded. 15 U.S.C. § 1681n(3). Utilizing the standards outlined in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the district court awarded counsel for Yohay $32,411 for attorney's fees and $957.90 for costs. In arriving at those awards, the district court reduced the number of hours, which counsel for Yohay stated he had spent in connection with the litigation, by 20% due to inadequate documentation of the time said to have been spent on the litigation, and also reduced the number of hours, reported as spent by law clerks on this litigation, by 20% on the basis that the amount of time, so reported as spent, was excessive. Furthermore, the district court reduced the lodestar amount by $2500 based upon its conclusion that the cases were not complex. Counsel for Yohay has not appealed from any reduction by the district court of his requested fees.

■ The district court did not necessarily err in failing to impose a greater downward adjustment of the lodestar amount simply because the attorney's fees awarded were three times as great as the amount of damages awarded to Yohay. The Supreme Court has stated:

> The amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded under § 1988. See *Johnson [v. Georgia*

*Highway Express, Inc.],* 488 F.2d [714], at 718 [ (5th Cir.1974) ]. It is, however, only one of many factors that a court should consider in calculating an award of attorney's fees. We reject the proposition that fee awards under [42 U.S.C.] § 1988 should be proportionate to the amount of damages a civil rights plaintiff actually recovers.

*City of Riverside v. Rivera,* 477 U.S. 561, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986). Proportionality of attorney's fees to the amount recovered is not required in every action brought pursuant to the FCRA. Since there will rarely be extensive damages in an FCRA action, requiring that attorney's fees be proportionate to the amount recovered would discourage vigorous enforcement of the Act.

■ While counsel for Yohay failed to provide the district court with adequate original contemporaneous time records to support his fee petition, the failure to provide such records did not require the district court to deny an award of fees entirely if there was an adequate reconstruction of time spent on this litigation. *Cf. Kennecott Corporation v. Environmental Protection Agency,* 804 F.2d 763, 767 (D.C.Cir. 1986) (per curiam). During oral argument in this Court, counsel for Yohay asserted that he had maintained adequate contemporaneous time records, but that such records were either lost or destroyed and could not be located following trial. The record discloses that counsel for Yohay presented to the district court adequately reconstructed time records.

■ Counsel for Yohay seeks an additional award of attorney's fees for time spent on this appeal. Counsel for Yohay is entitled to request and receive such an award. Accordingly, this Court remands these cases "for an assessment of additional attorneys' fees against the appealing defendant to compensate the plaintiffs for the expense of the successful defense of his appeal." *McManama v. Lukhard,* 616 F.2d 727, 730 (4th Cir.1980).

AFFIRMED AND REMANDED.