382 S.E.2d 338

**Earl CANTERBURY**

**v.**

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Ivan Richardson.**

**No. 18548.**

Supreme Court of Appeals of West Virginia.

June 16, 1989.

**286**

Jeremiah McCormick, Nitro, for Canterbury.

Mary K. Buchmelter, Asst. Atty. Gen., Charleston, for appellants.

WORKMAN, Justice:

This case is before the Court upon an appeal by the West Virginia Human Rights Commission (Commission) and Ivan Richardson (Richardson), pursuant to the West Virginia Administrative Procedures Act, *W.Va.Code* § 29A–1–1 *et seq.*, as amended. It arises from a final order of the Kanawha County Circuit Court reversing the order of the Commission which determined that Earl Canterbury (Canterbury) d/b/a Studio West violated the West Virginia Human Rights Act by engaging in illegal discrimination based on race. The appellants contend the circuit court erred in ruling that the extrajudicial statements of Sharon Rose (Rose) were inadmissible hearsay, in ruling that there was no other evidence in the record to show Canterbury discriminated against Richardson, and in failing to uphold the final order of the Commission. We conclude that the circuit court did err in ruling the extrajudicial statements of Rose were inadmissible hearsay and reverse the decision of the Kanawha County Circuit Court, thereby reinstating the final order of the Commission.

Appellant Richardson was interviewed by Bonnie Cogar (Cogar) for a position as a chef/cook with Studio West, a restaurant in Cross Lanes, West Virginia, which was jointly owned by Canterbury and Cogar. Richardson was subsequently hired and began work the first of October, 1982, at a salary of two hundred fifty dollars ($250.00) per week.

On November 19, 1982, Cogar left the partnership and Canterbury became the sole proprietor of Studio West. Appellant Richardson testified that shortly before Cogar left, both Cogar and Canterbury became aware of his interracial marriage[1] and that Cogar told him "to be careful."

Richardson also testified that Canterbury told all the waitresses, who were white, not to go into the kitchen. Either the barmaid or bartender would have to bring the food orders into the kitchen. Richardson also testified that Rose, the day manager hired after Cogar left, told him that "Mr. Canterbury didn't like interracial marriages," and that Canterbury had fired a white waitress when he found out she had been dating a black man.

The evidence presented before the Hearing Examiner also indicated that on approximately November 29, 1982, Richardson's salary was reduced by fifty dollars ($50.00) per week. On December 13, 1982, Richardson was terminated, a little more than two months after he had been hired. Rose told Richardson that he was being terminated because his services were no longer needed. However, a white woman was hired to perform the duties that Richardson had been performing. Furthermore, Studio West remained open for another year and a half after Richardson's termination.

The Hearing Examiner found that the extrajudicial statement of Rose pertaining to Canterbury's dislike of interracial marriages was within the "scope of agency" and was an admission against the principal, Canterbury. The evidence was, therefore, found to be admissible under under *W.Va. R.Evid.* 805. Canterbury argued before the Hearing Examiner that Richardson was

---

1.  Richardson, a black man, was married to a     white woman.

terminated because of economic considerations, claiming the business he anticipated when opening Studio West simply had not materialized. The Hearing Examiner and the Commission, however, found this defense was a mere pretext and that the actions against Richardson were, in actuality, taken because of his involvement in an interracial marriage.

Pursuant to *W. Va. Code* § 5–11–10 [1971] the Commission reviewed the recommendations of the Hearing Examiner and issued a final order on November 13, 1985, adopting the Hearing Examiner's Findings of Fact and Conclusions of Law as its own. Thereafter, Earl Canterbury d/b/a Studio West filed a petition for judicial review pursuant to *W. Va. Code* § 29A–5–4(g) [1964].

The lower court, upon review, set aside the Commission's final order. While finding that Richardson had proven his *prima facie* case, the court found that Canterbury had rebutted the *prima facie* case by articulating a legitimate, nondiscriminatory reason for the termination, citing "economic" grounds for his decision. The circuit court determined that the only evidence showing the petitioner discriminated against the complainant "is inadmissible and unreliable hearsay.... [t]here is no admissible evidence in the record which would show that the reasons given by Mr. Canterbury for terminating the complainant are pretextual." [2] Circuit Court Final Order at 4 (Nov. 26, 1986).

The primary issue before this Court is whether the lower court erred in finding that the statement made by Rose was inadmissible hearsay. The statement in question was elicited during Richardson's testimony. Richardson testified that "Sharon just told me that Mr. Canterbury didn't like interracial mixes [or marriages] mainly," and that Canterbury had fired a white waitress when he found out she had been dating a black man.

Hearsay is defined as "a statement, other than one made by the declarant [3] while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *W. Va. R. Evid.* 801(c). Hearsay evidence is generally inadmissible at trial because there is no way for the trier of fact to determine the trustworthiness of the statements made. F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8.2(B) at 452 (2d ed. 1986). Where a statement made involves two declarants, the potential for hearsay within hearsay arises.

"[H]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." *W. Va. R. Evid.* 805. Consequently, in order to properly analyze the statement made by Richardson, it must be broken down into its two component parts, i.e., the statement made by Rose and the statement made by Canterbury. It must first be determined whether each statement is indeed hearsay. If the statement is found to be hearsay, then it must fall within an exception to the hearsay rule in order to be admissible.

2. In an action to redress unlawful discriminatory practices in employment and access to "place[s] of public accommodations" under The West Virginia Human Rights Act, as amended, *W. Va. Code*, 5–11–1 *et seq.*, the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection the respondent continued to accept the applications of similarly qualified persons. If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejection. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.
Syl. Pt. 3, *Shepherdstown Volunteer Fire Dept. v. State ex rel. West Virginia Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342, 343–44 (1983).

3. A declarant is defined by *W. Va. R. Evid.* 801(b) as "a person who makes a statement."

■ The first statement to be evaluated is the one made by Canterbury. *W.Va. R.Evid.* 801(d)(2)(A) provides that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . (A) his [or her] own statement, in either his [or her] individual or a representative capacity. . . ." "Pursuant to this rule 'admissions by a party-opponent are not within the hearsay rule at all and for this reason are admissible as substantive evidence unless some other exclusionary rule applies.'" *Heydinger v. Adkins*, 178 W.Va. 463, 360 S.E.2d 240, 245 (1987) (citing F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8.5(A) at 469 (2d ed. 1986)). Obviously, if Canterbury stated that he disliked interracial mixes or marriages, this statement is an admission by a party-opponent in a racial discrimination suit.

■ The second statement which must be evaluated is the statement which Rose made to appellant Richardson. Again, *W.Va.R.Evid.* 801(d)(2)(D) states that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . (D) a statement by his [or her] agent or servant concerning a matter within the scope of his [or her] agency or employment, made during the existence of the relationship . . ."[4]

In *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir.1987) and *United States v. Portsmouth Paving Corp.*, 694 F.2d 312 (4th Cir.1982), the Fourth Circuit Court of Appeals, in cases similar to this case, examined the application of *Fed.R.Evid.* 801(d)(2)(D).[5] In *Yohay*, the ex-husband of an attorney on retainer with the City of Alexandria Employees Credit Union (credit union) brought suit against the ex-wife attorney alleging that she either used or caused an employee of the credit union to use the computer at the credit union to obtain information from the credit bureau concerning her ex-husband. *Yohay*, 827 F.2d at 969. The hearsay statement involved the credit union's assistant manager, Andrea Martin (Martin), testifying that Donna Hatton (Hatton), an employee of the credit union, told her (Martin) that she (Hatton) had obtained a credit report on Yohay from the credit bureau at the request of the credit union's manager, who was a friend of the ex-wife's present husband. The ex-wife's present husband was secretary-treasurer of the credit union. *Id.* The court upheld the admissibility of both the statements, the statement made by Hatton to Martin and the statement made by the credit union manager to Hatton. The court specifically held that neither statement was hearsay since each was "'concerning a matter within the scope of . . . [Hatton's] employment [and the credit union manager's employment], made during the existence of the relationship. . . .'" *Id.* at 970 (citing *Fed.R.Evid.* 801(d)(2)(D)).

Likewise, in *Portsmouth Paving Corp.*, the Fourth Circuit upheld the admissibility of a secretary's statements under *Fed. R.Evid.* 801(d)(2)(D). 649 F.2d at 322. The court indicated that "specific authorization to speak need not be shown," as long as "independent evidence establishing the existence of the agency [can] be adduced . . .," and the person was speaking about a subject within the scope of that person's employment. *Id.* at 321–22.[6]

---

4. Compare with the old West Virginia Rule which was
   [t]he extrajudicial declarations of an agent, not made under oath, are not admissible in evidence as admissions against the interest of the principal unless the declarations relate to an act within the authorization of the agent in which the agent was engaged at the time the declarations were made.
   Syl. Pt. 1, of *Reynolds v. W.T. Grant Co.*, 117 W.Va. 615, 186 S.E. 603 (1936); *See Coates v. Montgomery Ward & Co.*, 133 W.Va. 455, 57 S.E.2d 265, 266 (1949).

5. *W.Va.R.Evid.* 801(d)(2)(D) is patterned after the Federal rule and both rules are essentially the same.

6. *But see Hill v. Spiegel, Inc.*, 708 F.2d 233 (6th Cir.1983) where the court held that statements made by managers regarding age discrimination were inadmissible hearsay since the managers involved had no involvement in the decision to discharge the plaintiff-employee and thus the statements were not made within the scope of the manager's employment. *Id.* at 237.

It is undisputed that when the statement in question was made, Rose was the day manager for Studio West, hence, she was an agent/servant for Canterbury. Evidence was admitted before the Hearing Examiner establishing this agency/employee relationship. Further, the statement she made to appellant Richardson was one within the scope of her employment since it concerned the conditions of employment at Studio West. She was in charge of the day-to-day operations at the restaurant and she was the person who informed Richardson of his termination. Canterbury in fact testified that Rose did not have to consult with him prior to terminating Richardson.

Consequently, both statements are admissible in evidence since both statements are relevant and neither statement is considered to be hearsay under the *West Virginia Rules of Evidence*. Since *W.Va. Code* § 29A–5–2(a) [1964] states that "[t]he rules of evidence as applied in civil cases in the circuit courts of this state shall be followed" in hearings involving administrative agencies, the Hearing Examiner was not only correct in utilizing the evidentiary rules, but was also correct in the application of those rules.

The second issue raised on appeal is that the lower court erred in ruling that there was no other evidence in the record which showed that Canterbury discriminated against Richardson. In light of our determination on the first assignment of error, upholding the Commission's admission of the extrajudicial statements, we conclude the statements made by Rose and Canterbury did provide a factual basis for determining that Canterbury's economic basis for terminating Richardson was indeed pretextual. When the Commission determines that "an employer has accorded disparate treatment to members of different races ... [that] findings of fact ... may not be reversed by a circuit court upon review, unless such finding is clearly wrong in view of the reliable, probative and substantial evidence on the whole record." *State ex rel. West Virginia Human Rights Comm'n v. Logan–Mingo Area Mental Health Agency, Inc.*, 174 W.Va. 711, 329 S.E.2d 77, 86 (1985). The findings made by the Commission in the present case were not "clearly wrong" based on the evidence which was before the Hearing Examiner,[7] and the circuit court did err in failing to uphold the final order of the Commission.

Based on the foregoing, the judgment of the Circuit Court of Kanawha County is reversed and the final order of the Commission is hereby reinstated.

Reversed.

---

7. "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence...." Syl. Pt. 1, in part, *West Virginia Human Rights Comm'n v. United Transp. Union, Local No. 655*, 167 W.Va. 282, 280 S.E.2d 653, 654 (1981).