Samuel **MYERS** and Timothy Myers, Plaintiff,

v.

**BENNETT LAW OFFICES, et al., Defendants.**

**No. CV–S–98–1178–LRH–LRL.**

United States District Court, D. Nevada.

Dec. 31, 2002.

---

Craig Friedberg—004606, Craig B Friedberg, Law Office Of, Jeffrey I. Pitegoff—005458, Black Lobello & Pitegoff, Las Vegas, for Myers, Samuel, Plaintiff.

Judith Kohl—005780, Beckley Singleton, Chtd., Las Vegas, Charles D. McCallon -,

Bennett & Deloney, Salt Lake City, UT, Dan R. Waite—004078, Beckley Singleton, Chtd., Las Vegas, for Bennett Law Offices, Defendant.

### ORDER

HICKS, District Judge.

## I. INTRODUCTION

This case arises out of an alleged violation of the Fair Credit Reporting Act. Before the Court is Defendant's motion for summary judgment (# 79); Plaintiffs' counter-motion for partial summary judgment (# 101); Plaintiffs' motion to re-open discovery to depose Terry Sweet (# 100); Defendant's motion to strike plaintiffs' motion for partial summary judgment (# 105); as well as Defendant's motion to strike Plaintiffs' late filed affidavits in support of plaintiffs' opposition (# 119).

## II. FACTUAL & PROCEDURAL BACKGROUND

In a prior state court action in Texas, Jim Barber ("Barber") sued Automated Recovery Systems ("ARS"), a company owned and operated by the Plaintiffs, Samuel and Timothy Myers, (collectively "Plaintiffs") for unlawful debt collection practices. Barber, at the time of the lawsuit, was employed as a paralegal for Bennett Law Offices, the Defendant, and regularly pulled credit reports on debtors as part of his employment duties. During the course of the Texas lawsuit, Barber requested a credit report on ARS from National Data Research ("NDR") using one of Defendant's order forms. Later, according to Terry Sweet ("Sweet"), President of NDR, Barber orally requested credit reports from Sweet on both Samuel and Timothy Myers, individually. Barber counters that he never requested a consumer credit report on either of the Plaintiffs, nor did he receive, use, or see such a report. And in the event that he did,

according to Michael Bennet, the principal of the Defendant, Barber did not have the authority from the Defendant to do so, and as a result he would have been acting outside the scope of his employment. (Mot. Summ. J., Ex. D, ¶ 4).

As a result of the foregoing, Plaintiffs filed suit on August 17, 1998, alleging Bennett, through its employee Barber, violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Plaintiffs also filed suit on January 7, 2000 in the District Court of Utah, which was later transferred to Nevada on May 1, 2001 and consolidated with the Nevada suit on June 27, 2001.

This case has also been to the Ninth Circuit on appeal. Earlier in the litigation, the district court granted Defendant's motion to dismiss for lack of personal jurisdiction and improper venue. The Ninth Circuit reversed in a 2001 opinion, remanding the case for further proceedings in accordance with its ruling. *See Myers v. Bennett Law Offices,* 238 F.3d 1068 (9th Cir.2001).

After excessive legal wrangling over discovery, the Defendant filed for summary judgment. Plaintiffs responded with a mixed opposition and counter-motion for partial summary judgment as to liability. Plaintiffs also filed additional affidavits to be included in their opposition. Defendants then moved to strike both the counter-motion for partial summary judgment and the supplemental affidavits. Finally, in addition to their opposition and counter-motion for partial summary judgment, Plaintiffs request leave to depose an additional witness, Terry Sweet. The Defendant opposes Plaintiffs' request. Upon review of the evidence presented, the memoranda of the parties, the court makes the following disposition.

## III. Analysis

Summary judgment is appropriate only when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

The initial burden rests on the moving party to point out the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is " 'sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.' " *Calderone· v. United States,* 799 F.2d 254, 259 (6th Cir.1986). *See Idema v. Dreamworks, Inc.,* 162 F.Supp.2d 1129, 1141 (C.D.Cal.2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out

to the court "that there is an absence of evidence to support the nonmoving party's case." *Catrett,* 477 U.S. at 325, 106 S.Ct. 2548.

In responding to a summary judgment motion, the non-moving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

The FCRA prohibits any person from using or obtaining a consumer report for anything other than permissible purposes. *See* 15 U.S.C. § 1681b(f).[1] Any person who willfully or negligently fails to comply with any requirement of the Act with re-

---

1. The parties debate whether the Plaintiffs included a claim under 1681b(f) in addition to claims under section 1681n and section 1681q in their complaint. Congress added sections 1681b(f) and 1681n(b) to the statutory regime under the Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–426 (codified as amended at 15 U.S.C. § 1681 *et seq* ), in order to explicitly extend liability to users of credit reports. *See Jones v. Federated Financial Reserve Corp.,* 144 F.3d 961, 964 (6th Cir.1998). While sections 1681b(f), 1681n(b), and 1681q overlap to some extent, 1681b(f) prohibits a more broad array of activity than 1681n(b) and 1681q, and requires a lower threshold of specific intent than 1681q. In this case, Plaintiffs' complaint originally filed in the District

of Utah contains a reference to 1681b(f), thereby putting Defendants on notice that a claim for relief under 1681b(f) was included in the case. Ultimately, however, there is no need to utilize either 1681b(f) or 1681q in this case, as the Court finds that if Barber obtained the report, the report itself would constitute a consumer report obtained from a consumer reporting agency. Therefore, 1681n(b), the new knowing non-compliance provision would be the appropriate section upon which to base liability. Only if the Court found that either the report did not constitute a consumer report or that the report was not obtained from a consumer reporting agency would the sections 1681b(f) or 1681q become relevant.

spect to any consumer is liable to that consumer for actual damages, and attorneys' fees and costs. *See* 15 U.S.C. §§ 1681n-*o*. Willful violations may also result in punitive damages. *See* 15 U.S.C. § 1681n. To prevail, Plaintiff must prove three elements. First, Plaintiffs must demonstrate that Defendant obtained a "consumer report" from a "consumer reporting agency" under the FCRA.[2] *See* 15 U.S.C. § 1681a(d). Second, Plaintiff must establish that the Defendant obtained their credit reports under false pretenses or knowingly without a permissible purpose. And finally, the Plaintiff must show that the Defendant acted willfully or negligently when it requested the report. 15 U.S.C. § 1681n-*o*. The Court must also address the difficult question presented by the facts in this case: is Bennett Law Offices liable for the acts of Barber, its employee, under the FCRA? The parties also dispute the issue of damages under the FCRA.

### A. Consumer Reporting Agency

■ It is unclear whether NDR and Credit Chequers (the internet site Terry Sweet uses to obtain credit reports) are "consumer reporting agencies," as defined by the FCRA or merely resellers of consumer credit reports. Section 1681e(e) specifically applies to resellers of reports and states that "[a] person may not procure a consumer report for purposes of *reselling* the report (or any information in the report) unless the person discloses to the consumer reporting agency that originally furnishes the report-(A) the identity of the end-user of the report (or information); and (B) each permissible purpose under section 1681(b) of this title for which the report is furnished to the end-user of

the report (or information)." (Emphasis added). Assuming Barber, as the end-user, requested the credit report, he ultimately would have obtained it from Equifax, TransUnion, and/or Experian, all of which would fit under the FCRA's definition of "consumer reporting agency." There is no requirement that NDR or Credit Chequers be consumer reporting agencies; only that NDR and Credit Chequers comply with the FCRA as it relates to them since it appears that they are reselling the reports. For purposes of analysis in this case, Barber is alleged to be a person who used or obtained a consumer report from a consumer reporting agency such as Experian. The Court is not aware of statute or case-law that suggests the transfer has to be directly from the consumer reporting agency to the end user to form liability under the FCRA. *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 49 (2nd Cir.1997) (noting that the term "user" includes the ultimate user of the credit report even if an intermediary acquired the report for the end-user). Instead, FCRA liability can be based on the facts presented in this case.

### B. False Pretenses

As with everything else, the parties disagree over the definition of false pretenses. The Defendant claims that to obtain a consumer report under false pretenses, Barber would have had to explicitly lie to Sweet concerning his intentions for the report. Indeed, Plaintiff and Sweet do not claim that Barber lied to Sweet; rather, they claim Barber did not explicitly state his allegedly impermissible purpose for securing Plaintiffs' consumer reports.[3]

---

**2.** Defendant does not challenge the fact that the information would be classified as a "consumer report."

**3.** The plain language of section 1681n(b) provides for civil liability whether Barber used

false pretenses to obtain the report or obtained the report knowingly without a permissible purpose. Even if a jury found that Barber did not use false pretenses, the jury could alternatively find that Barber requested the

■ The Ninth Circuit has long held that "obtaining a consumer report in violation of the terms of the statute without disclosing the impermissible purpose for which the report is desired can constitute obtaining consumer information under false pretenses ...." *Hansen v. Morgan*, 582 F.2d 1214, 1219–20 (9th Cir.1978). The Court follows this holding and finds that a sufficient question of material fact exists as to whether Barber actually requested the report, and if he did, whether he employed false pretenses in doing so.

### C. Agency Law

■ Plaintiffs claim that Bennett Law Offices, Barber's employer during the relevant time period, is responsible for Barber's alleged tortious acts. In fact, Plaintiffs have not filed this action against Barber, electing instead to sue only his employer. Plaintiffs contend that Court should follow the lead of the Sixth Circuit in *Jones v. Federated Financial Reserve Corp.*, 144 F.3d 961 (6th Cir.1998), and find common law agency principles apply to actions brought under the auspices of the FCRA. If agency principles are applied, a reasonably jury could then find Bennett Law Offices liable, because Barber was acting with apparent authority when he requested the reports. Under an apparent authority theory, a principal may be vicariously liable for an agent's tortious conduct if the principal "held its agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority." *See id.* at 965 (citing Restatement (Second) of Agency §§ 8 and 219(2)(d)). In addition to apparent authority, Plaintiffs also assert that Bennett Law Offices ratified Barber's actions when they paid for the reports they allege Barber impermissible requested.

■ Defendant on the other hand cites *Kodrick v. Ferguson*, 54 F.Supp.2d 788 (N.D.Ill.1999), and argues that common law agency principles should not be utilized in FCRA claims, and thus, Bennett Law Offices should not be held liable for Barber's actions. The Court, aware of the fact that the Ninth Circuit has not passed on this question of law, finds that agency principles are appropriate in this instance in light of the fact that "[p]rotecting consumers from the improper use of credit reports is an underlying policy of the FCRA." *See Jones*, 144 F.3d at 965. In this case, Plaintiffs' apparent authority theory would be consistent in "keeping with the FCRA's underlying deterrent purpose because employers are in a better position to protect customers by use of internal safeguards." *Id.* at 965–66 (quoting *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987)).

Therefore, to prevail on their section 1681n claim against Bennett Law Offices, Plaintiffs must prove that Barber (1) requested the report, (2) using false pretenses, or knowingly without a permissible purpose, and (3) that Bennett Law Offices cloaked Barber with apparent authority and/or ratified his act. While all three elements contain genuine issues of material fact, the most obvious question is whether Barber requested the report at all, as Barber insists in a sworn affidavit that he never requested nor obtained the report. (Mot.Summ. J., Ex. E, p. 3). Thus, it is unnecessary at this time to explain the existing questions of fact as to the second and third elements and summary judgment as to Plaintiffs' willful non-compliance claim is denied.

### D. Negligence

With regard to Plaintiffs claim for negligence pursuant to Section 1681o, the issue

report knowing he did not have a permissible purpose for doing so.

before the Court is not quite as straightforward. The Court notes that two questions emerge from the statutory scheme, the case law, the facts of this case and the litigants' arguments. First, is Bennett Law Offices directly liable; or more to the point, does the FCRA place a duty on employers to institute policies to ensure their employees comply with the FCRA either through text or through agency principles? Second, is the Ninth Circuit's conclusion in *Hansen*, that a violation of section 1681q forms a basis for liability under either 1681n or 1681o still good law after the 1996 amendments to the FCRA, and if so, what are the implications?

As is the case with the willful non-compliance issue discussed above, the Ninth Circuit has never addressed the issue explicitly. Nor can the Court easily ascertain the best course of action when viewing court opinions outside this jurisdiction, as cases with analogous facts have reached inconsistent results.[4] The Court, however, declines to answer this question, as Plaintiffs have failed to assert the necessary evidence to conclude that a jury could reasonably find in their favor with respect to a negligence claim based on any theory.

Plaintiffs' opposition and counter-motion clearly provide evidence that would support a finding that Barber—and vicariously Bennett Law Offices—willfully failed to comply with the requirements of the FCRA; namely, Barber requested the report either using false pretenses or with an impermissible purpose in mind. To support a negligence claim Plaintiffs must do the same; they must provide the Court with evidence suggesting Bennett Law Offices negligently supervised Barber by failing to put in place procedures required by

the FCRA. In an attempt to present such evidence, Plaintiffs have included a report from Mr. Evan Hendricks, a self-described expert on privacy. In his report, Mr. Hendricks concludes that not only does an employer have a duty to prevent employee abuse of consumer reports—a legal conclusion—but that Bennett Law Offices breached that duty by failing "to establish an adequate policy to guard against employee abuse of consumer reports ...." (Opp'n, Ex. 3, p. 8). However, no where in the report nor in Plaintiffs' opposition can the Court find any evidence in the form of deposition testimony, affidavit, or declaration as to whether Bennett Law Offices had a formal policy, let alone what the policy was or should have been. The report places great weight on the fact that in his deposition, when asked "[h]ow did you go about keeping yourself abreast of the Fair Credit Reporting Act situations and laws," Michael Bennett replied, "[n]ot very well." (Opp'n, Ex. 3, p. 11). Mr. Hendricks' report further notes, without citing the corroborating deposition testimony, that "Bennett also admitted that the protections ... only included locking the door and using a password." (Opp'n, Ex. 3, p. 11). Assuming Bennett Law Offices' policy of locking the door and using the password is their official policy, the Court will compare Bennett Law Offices' alleged policy with other policies in order to decide whether a jury could reasonably find in favor of the Plaintiffs.

■ The Court's job would be made easier if the Plaintiffs had cited any case law explaining what would constitute proper procedures. For instance, in *Yohay*, 827 F.2d at 973, the Defendant "had not

---

4. For example, compare *Del Amora v. Metro Ford Sales and Service, Inc.*, 206 F.Supp.2d 947 (N.D.Ill.2002) (applying agency principles including Restatement (Second) of Agency § 219(2) to a claim under the FCRA) and *Kodrick v. Ferguson*, 54 F.Supp.2d 788 (N.D.Ill.1999) (finding agency principles do not apply to the FCRA). In the Court's opinion, the analysis applied in *Del Amora* is preferable.

posted any guidelines to users of the computer informing them of the circumstances under which such credit information could be obtained. Indeed, the [Defendant] had posted the code which provided access to the computer system, enabling anyone with the physical opportunity to use the system to access CBI's files." Or take the case of *Kodrick*, where the employer knew that one of its employees had twice used the employer's facilities improperly. *See Kodrick*, 54 F.Supp.2d at 798, n. 13. There the court stated that the employer's knowledge as to the previous violations "hardly demonstrate[d] Accubanc's 'careless' attitude toward FCRA requirements." *Id.* If these cases demonstrate the standard by which the FCRA should be interpreted as to employers, Bennett Law Offices would not be negligent as a matter of law. But the Court need not attempt to establish a threshold for liability in this case, as Plaintiffs have not provided sufficient facts to support any determination of the negligence claim against Bennett Law Offices. Ultimately, Plaintiffs would have the Court find Bennett Law Offices negligent based solely on the allegation that because Barber impermissibly requested the report, Bennett Law Offices must have had faulty compliance procedures in place. The Court finds this argument untenable. It is Plaintiffs responsibility to show evidence of a policy so negligent or reckless that it would "almost invite violations." *Id.* Plaintiffs have not done so.

Finally, the Court must address the case of *Hansen v. Morgan*, where the Ninth Circuit apparently held that a violation of section 1681q, a criminal statute requiring a *mens rea* of knowingly and willfully, can form the predicate for civil liability under section 1681n and 1681o. Specifically, section 1681o(a) provides that "[a]ny person

who is negligent in failing to comply with any requirement imposed ...with respect to any consumer is liable to that consumer ...." As courts from both the Ninth Circuit and other jurisdictions have noted, it would be illogical to find someone negligent for willfully or knowingly violating a requirement of the FCRA. *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 47 (2nd Cir.1997); *Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 368 n. 1 (6th Cir.1984); *Allen v. Calvo*, 1992 WL 391302 at *2 (D.Or.).

Such a holding is made even more questionable by the introduction of the new knowing non-compliance provision at section 1681n(b) by the 1996 Amendments. This section creates civil liability on the part of "[a]ny person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose." *See* 15 U.S.C. § 1681n(b). This new text closely parallels the language contained in section 1681q. The fact that a similar provision for negligence was not created by the 1996 Amendments is telling. Indeed, the fact that Congress specifically codified civil liability under section 1681n, incorporating much of the language found in 1681q and did not do the same to section 1681o, indicates a tacit approval with the *Northrop* court's analysis rather than *Hansen*'s.[5]

Nor does the Court believe that the Ninth Circuit in *Hansen* necessarily held that section 1681q formed a basis for liability under section 1681o. In fact, in the second to last paragraph of the court's opinion in *Hansen*, the court did not even mention section 1681o, and instead held that "[n]oncompliance with [section] 1681q thereby forms a basis of civil liability under [section] 1681n." *See Hansen*, 582

---

**5.** This is not to say that civil liability does not exist for negligent violations of the requirements of the FCRA pursuant to section 1681o. It simply means that a violation of Section 1681q, and now section 1681n(b), do not form the basis of liability under 1681o.

F.2d at 1221. In 1990, the Ninth Circuit cited *Hansen* approvingly in another FCRA case, and quoted the language that left out section 1681o. *See Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273 (9th Cir.1990). This would suggest that the true holding of the Ninth Circuit is that prior to the 1996 Amendments, section 1681q formed a basis for liability only for section 1681n.

■ Accordingly, the Court finds that no jury could reasonably find for the Plaintiff on any negligence theory, and further finds that section 1681q does not form a basis for negligence liability as a matter of law.

### E. Damages

Bennett Law Offices also contests Plaintiffs' ability to prove their alleged damages, which consist of alleged emotional distress, an alleged lost opportunity to purchase a home, and the alleged loss of pre-screen promotions. The Court agrees with the Defendant, and finds that Plaintiffs' cannot, based on the evidence before the court, prove actual damages as a matter of law.

Specifically, Plaintiff Samuel Myers' assertion that he was damaged because he may not have received pre-screen promotions is entirely speculative and without merit. Along the same lines, Plaintiff Timothy Myers' allegation that the inquiry on his report thwarted his ability to obtain the residential real estate is not supported by the evidence. In fact, it was Myers himself who withdrew his credit application for the home purchase. Importantly, the Plaintiff has provided no evidence to suggest how long it would have taken to receive the loan. Instead, he states that he withdrew his application out of fear that the process would be delayed, that he would have lost his earnest money, and that he would have had to pay daily penalties. However, allowing Plaintiff to recover on such a speculative theory would "make the FCRA completely overflow the boundaries of causation." *Podell v. Citicorp Diners Club, Inc.*, 914 F.Supp. 1025, 1037 (S.D.N.Y.1996).

In an attempt to bolster their argument, Plaintiffs' opposition argues that Plaintiff Timothy Myers "has produced evidence that but for the very strange inquiry showing up on his credit report in the midst of him attempting to buy a house ... he would have received the loan and, would have purchased the Candy Apple Property." (Opp'n, pg.28) (footnotes omitted). The Court is unaware of any such evidence. In fact, quite to the contrary. Plaintiffs' own credit expert, Mr. Robert Thompson, admitted in his deposition that if he saw the alleged entry on Plaintiff Timothy Myers' credit report, because it was so odd, he would have "ignore[d] it as a bunch of garbage ...." (Opposition, Ex. 27). Such a statement directly contradicts Plaintiff Timothy Myers' suggestion that his lender would not have approved his application in a reasonable amount of time. As such, Plaintiffs have failed to demonstrate their ability to prove these alleged damages and summary judgment is appropriate.

Plaintiffs have also made an attempt to prove actual damages based on the emotional distress they claim to have suffered from Barber's alleged inquiry. Plaintiffs filed two affidavits in support of their emotional distress damages claim, almost two months after filing their opposition. While the Court is unclear as to why the affidavits in support of their claims were filed so long after their opposition, there is no prohibition on doing so other than Fed. R.Civ.P. 56(c), which permits Plaintiffs to file affidavits "up until the day before the hearing." The authority Bennett Law Offices cites in support of their motion to strike the affidavits is inapposite, as there is no local rule conflicting with Fed.

R.Civ.P. 56(c) in this district. Therefore, Bennett Law Offices motion to strike the late filed affidavits (# 119) is denied, and the Court will consider the affidavits.

 There is no dispute that actual damages can include recovery for emotional distress. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir.1995) (finding a denial of credit was not necessary to support plaintiff's emotional distress damages). The Ninth Circuit, in fact, has likened a violation of the FCRA to invasion of privacy cases, "where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir.2001). However, a plaintiff must support a claim for damages based on emotional distress with something more than his or her own conclusory allegations. *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir. 2001). Support can come from the surrounding circumstances or other "evidence of genuine injury, such as the evidence of the injured party's conduct and the observations of others." *Id.* (citations omitted). In *Cousin*, the Fifth Circuit held that the plaintiff's own testimony was legally insufficient to establish emotional distress damages under the FCRA. *See id.* To properly establish intangible loss, the court held that the plaintiff must prove his claims with " 'a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award.' " *Id.* (citations omitted).

 Here the Court finds Plaintiffs' affidavits insufficient as a matter of law to support an award of damages based on emotional distress. Plaintiffs fail to point out any evidence of their distress other than their own conclusory statements. The Court is unaware of any medical testimony or testimony by any individuals other than the Plaintiffs tending to corroborate their claims. As such, summary judgment is granted as to all alleged actual damages.

 As Plaintiffs rightly point out, however, there is no requirement in the FCRA that to receive punitive damages, actual damages must first be proven. *See Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987). Section 1681n(a) and (b) allow for either actual damages or a statutory amount of $1,000, whichever is greater. Additionally, a claimant may also request punitive damages as the Court may allow. *See* 15 U.S.C. § 1681n. Furthermore, "[p]unitive damages awarded under section 1681n are within the discretion of the court and malice or evil motive need not be found for such an award, but the violation must be willful." *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir.1980).

Were the analysis to end here, the Court would allow this case to go forward with possible recovery confined to the statutory amount of $1,000, and punitive damages for Defendant's willful non-compliance with the FDCPA. However, as common law agency principles were used to extend liability to the employer in this case, those same principles must be addressed to extend punitive damage liability to the employer as well. Under the Restatement (Second) of Agency § 217C:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if, (a) the principal or a managerial agent authorized the doing and the manner of the act, or (b) the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act.

*See also* Restatement (Second) of Torts § 909.

As previously noted, summary judgment is denied as to Plaintiffs' willful non-compliance claim based on agency principles of apparent authority and ratification. However, it does not appear that the level of willfulness necessary to support liability under the agency and ratification theories is the same as the level of wilfulness necessary to support punitive damages. Here the evidence in support of Plaintiffs' willfulness argument is limited to Bennett Law Offices' willfulness in cloaking Barber with apparent authority and in turn paying the charges which arose from Barber's alleged request of the prohibited information. Neither act of willfulness evinces either malice or an ill motive such as is generally associated with punitive damages.

If Plaintiffs had filed this action against Barber, a willful violation of the FDCPA would suffice to establish a basis for punitive damages. However, the Court is unwilling to employ the lower willfulness standard ordinarily used against those who willfully violate the FDCPA to the actions of employer, made liable based solely on common law agency principles. With this in mind, the evidence presented by the Plaintiffs does not support the requisite malice or evil intent on the part of Bennett Law Offices which would be necessary to form the basis for punitive damages.

## IV. CONCLUSION

Based on the foregoing, summary judgment is denied as to Defendant's challenge of Plaintiffs' willful non-compliance claim. However, summary judgment is granted in favor of the Defendant as to Plaintiffs' negligence claim and as to Plaintiffs' claims for actual damages and punitive damages. Plaintiffs' partial motion for summary judgment and all motions to strike are denied as well.

Plaintiffs' also request the opportunity to depose Terry Sweet. It appears from the pleadings herein that the parties undertook some efforts to locate Sweet during the period for discovery and were unsuccessful in that regard. There appearing no prejudice to either party, the Court finds that there is good cause to reopen discovery for 30 days from the entry of this Order for the limited purpose of taking the deposition of Terry Sweet.

IT IS THEREFORE ORDERED that Defendant's motion for summary judgment (# 79) is **granted in part** and **denied in part.**

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment (# 101) is **denied.**

IT IS FURTHER ORDERED that Plaintiffs' motion to reopen discovery to depose Terry Sweet (# 100) is **granted.** The parties have 30 days from entry of this order to take the deposition.

IT IS FURTHER ORDERED that Defendant's motions to strike (# 105 and 119) are **denied.**