Allison HENRY, Plaintiff,

v.

**WESTCHESTER FOREIGN AUTOS, INC. and Toyota Motor Credit Corporation, Defendant.**

No. 07 Cv. 1363(CLB).

United States District Court, S.D. New York.

Nov. 9, 2007.

Andrew G. Pizor, Consumer Law Group, LLC, Rocky Hill, CT, Brian Lewis Bromberg, Bromberg Law Office, P.C., New York City, for Plaintiff.

Brian James Carey, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Morristown, NJ, William Nicholas Aumenta, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Ridgewood, NJ, for Defendant.

### Memorandum and Order

BRIEANT, District Judge.

Before the Court in this action for declaratory, compensatory and punitive relief, as a result of violations of the Credit Repair Organization Act, the Equal Credit Opportunity Act, and Fair Credit Reporting Act, as well as state law breach of contract and common law fraud, is a motion for an order of summary judgment, pursuant to Fed. R. Civ. Pro. § 56. The motion was filed on August 29, 2007 (Doc. 15). Opposition papers were filed on September 17, 2007 (Doc. 34). Reply papers were filed on September 24, 2007 (Doc. 44).

*Background*

The following facts are presumed true for the purposes of this motion only. On July 26, 2003, Allison Henry ("Plaintiff") purchased a used 2000 Toyota Camry from Westchester Foreign Autos, Inc. ("Defendant" or "Westchester Autos"). Westchester Autos is a New York corporation with its principal place of business in Yonkers, New York. Plaintiff financed the vehicle through AmeriCredit. Toyota Motor Credit Corporation ("Defendant" or "TMCC") is a California corporation, authorized to do business in New York, with its principal place of business in Torrence, California. TMCC is Westchester Autos' (collectively the "Defendants") primary lender.

Two years later, on March 3, 2005, Plaintiff returned to Westchester Autos to refinance her existing AmeriCredit loan. Plaintiff completed an application for refinancing and submitted it to Westchester Autos. Plaintiff asserts in her complaint that Westchester Autos obtained a consumer credit report regarding Plaintiff and used it for the purpose of evaluating Plaintiff's credit application. Defendants' assert that because Westchester Autos is an automotive retail dealership and cannot extend credit to consumers, Plaintiff's application for refinancing was forwarded to TMCC for consideration. TMCC approved Plaintiff for refinancing.

Plaintiff contends that Westchester Autos provided her with a Truth in Lending Act disclosure statement and contract reflecting the terms of the loan she had been approved for. Plaintiff claims that the terms that she agreed to were for an Amount Financed of $9,761 with an APR of 13.25% to be paid in 48 monthly installments of $263.07 and the total of the fi-

nancing agreement was for $12,627.36. Defendants claim that the Plaintiff agreed to an Amount Financed of $10,995.90, to be paid in 48 monthly installments of $296.35, for which the total was $14,224.80. Plaintiff maintains that the contract, bearing the information that Defendants claim, was not signed by her, nor upon her consent, but was forged by Westchester Autos at a later date. Plaintiff continues that Westchester Autos then assigned the forged contract to TMCC and arranged with the New York Department of Motor Vehicles to issue a title that reflected a lien in favor of TMCC.

Defendants maintain that Plaintiff agreed to the terms of the contract that totaled $14,224.80. Additionally, Defendants claim that in connection with the 2005 refinance, Plaintiff purchase optional GAP insurance for $170.00 and an optional "Gold" package service agreement for $995.00. Over four months later, on August 11, 2005, Defendants assert that Plaintiff returned to the dealership and cancelled the "Gold" package service agreement. Plaintiff maintain that she never purchased these additional packages.

On February 23, 2007, Plaintiff commenced this action in the District Court alleging that Defendants forged her name on the Retail Installment Contract in 2005. Plaintiff asserts claims against Defendant Westchester Autos for breach of contract, common law fraud, declaratory judgment and violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681m; Equal Credit Opportunity Act, 15 U.S.C. § 1691(d); Credit Repair Organizations Act, 16 U.S.C. § 1679b; and N.Y. General Business Law § 349. Plaintiff only asserts a claim against TMCC for declaratory relief. Jurisdiction is based solely on Defendant Westchester Autos' alleged violation of the federal statutes.

## Discussion

### Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "The party against whom summary judgment is sought, however, 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see* Fed. R. Civ. Pro. § 56(e) ("adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial").

### Plaintiffs don't need expert to prove forgery

Defendants assert that, as a matter of law, Plaintiff will be unable to prove her forgery claims without the aid of an expert witness. This contention is incorrect. Under the Federal Rules of Evidence, a layperson, with familiarity, can give his or her opinion as to the identity and authenticity of a signature, as long as the testimony complies with Rule §§ 901(b)(2) and 701.

Fed.R.Evid. § 901(b)(2) deals with the authentication and identification of evidence and "provides that the authenticity of a handwriting sample may be proven by '[n]onexpert opinion ... based upon familiarity not acquired for purposes of litigation.'" *United States v. Samet*, 466 F.3d 251, 254 (2d Cir.2006) (quoting Fed. R.Evid. § 901(b)(2)). Additionally, rule § 701 dictates that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed.R.Evid. § 701. "[L]ay witnesses who testify as to their opinion regarding someone's handwriting must not only meet the strictures of *Rule 701*, but must also satisfy *Rule 901(b)(2)*." *Samet*, 466 F.3d at 254. Additionally, under Rule § 901(b)(3), the trier of fact is permitted to compare authenticated specimens and make a determination regarding someone's handwriting. There is no rule that requires Plaintiff to retain an expert on the issue of the authenticity and identity of signatures in an action based on fraud.

*Credit Repair Organizations Act*

 The Credit Repair Organization Act ("CROA") was enacted to protect the public from unfair or deceptive business practices by credit repair organizations. Under 15 U.S.C. § 1679b, it is a violation of the CROA for any "person" to:

> (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to-
>
> > (A) any consumer reporting agency ...;or
> >
> > (B) any person-
> >
> > > (i) who has extended credit to the consumer; or
> > >
> > > (ii) to whom the consumer has applied or is applying for an extension of credit.

15 U.S.C. § 1679b(a). Statutory language is analyzed by looking at the "specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Congress' focus in enacting the CROA was on the credit repair industry, and specifically for regulation of credit repair organizations. Although this section uses the word "person," it is clear that it was not Congress' intend to have to CROA apply to all persons, whether they are associated with credit repair or not. Thus, only a credit repair organization or a "person" associated with a credit repair organization can violate the CROA.

Under the CROA:

> The term "credit repair organizations"—
>
> > (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide or perform (or represent that such person can or will sell, provide or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
> >
> > > (i) improving any consumer's credit record, credit history, or credit rating; or
> > >
> > > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A). Other federal courts have considered whether a car dealership may come within the definition of "credit repair organization" under § 1679a(3)(A). *See Wojcik v. Courtesy Auto Sales,* 2002 WL 31663298 (D.Neb. Nov. 25, 2002) (finding that the CROA may apply to a car dealership, but not in that case); *Sannes v. Jeff Wyler Chevrolet, Inc.,* 1999 WL 33313134 (S.D.Ohio Mar. 31, 1999) (finding that the CROA did not apply to car dealerships).

Plaintiff does not allege that Westchester Autos is a credit repair organization or associated with such an organization. There is no allegation that Westchester Autos held itself out to be a credit repair organization or made any representations to Plaintiff that it offered credit repair services. Nor are there allegations that Westchester Autos engaged in any advertising or solicitation about credit repair services or that Plaintiff was lured in by any such promotion.

Therefore because Westchester Autos is not a credit repair organization or associated with any such organization, the Defendants' motion for summary judgment on Plaintiff's CROA claim is granted.

*Equal Credit Opportunity Act*

■ The Equal Credit Opportunity Act ("ECOA") was enacted to prohibit discrimination in credit transactions. The Act requires creditors to furnish notice of the specific reasons why an adverse action was taken against a consumer. *See* 15 U.S.C. § 1691(d). The ECOA delegated to the Federal Reserve Board the power to implement regulations in furtherance of carrying out the Act's purpose. *See* 15 U.S.C. § 1691b(a). These regulations are found under *12 C.F.R. §§ 202.1–202.15.* ("Regulation B").

"Adverse action" under the ECOA, "means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the same amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6); *see also* 12 C.F.R. § 202.2(c)(*l*)(I).

Plaintiff claims that Westchester Autos did not submit the credit application signed by Plaintiff to TMCC, but instead sent a forged application containing different credit terms. Defendants, however, maintain that Plaintiff agreed to all the terms contained in the credit application that was accepted by TMCC and further assert that all information contained therein was supplied by the Plaintiff. Thus, whether the Defendants engaged in "adverse action", as defined under the ECOA is a question of fact, which cannot be decided on a motion for summary judgment.

■ Even assuming that adverse action was found, the notice requirements of the ECOA apply only to creditors. *See* 15 U.S.C. § 1691(d)(2). Under the ECOA, "[t]he term 'creditor' means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(e). Regulation B extends the definition of "creditor":

> Creditor means a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit. The term creditor includes a creditor's assignee, transferee, or subrogee who so participates. For purposes of § 202.4(a) and (b), the term creditor also includes a person who, in the ordinary course of business, regularly refers applicants or prospective applicants to creditors, or selects or offers to select creditors to whom requests for credit may be made.

12 C.F.R. § 202.2(1). It is clear that Westchester Autos does regularly refer

applicants to creditors. However, because §§ 202.4(a) and (b) deal with discrimination and discouragement, respectively, and the Plaintiff has not made any allegations that Defendant Westchester Autos participated in any discrimination or discouragement, Westchester Auto does not fall within this definition of "creditor". *See* 68 Fed.Reg. 13144–0I, 13155 (March 18, 2003) ("where the only role a person plays is accepting and referring applications for credit, or selecting creditors to whom applications will be made, the person meets the definition of creditor, but only for purposes of the prohibitions against discrimination and discouragement").

According to the deposition of Westchester Autos finance manager, it appears that it is Westchester Autos regular course of business to review credit applicants' credit reports to "assess the situation and send it to the bank that we think is the bank that will approve her loan." (Pl. Memo. Clark Dep. ¶ 22 ln. 17–20). However, it is not clear whether Westchester Autos regularly participates in the actual decision to grant or deny credit to a particular applicant.

Thus, the questions that must be answered are whether Westchester Autos engaged in "adverse action" as that term is defined under the ECOA and whether Westchester Autos regularly arranges or participates in credit decisions in the ordinary course of its business, pursuant to 15 U.S.C. § 1691a(e). These are questions of fact that cannot be determined on summary judgment motion, and as such, the motion based on alleged violations of the ECOA is denied.

*Fair Credit Reporting Act*

■ The Fair Credit Reporting Act ("FCRA") was enacted to ensure the accuracy and fairness of credit reporting. The relevant section of the act provides that "[i]f any person takes adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report, the person shall" provide notice to the consumer. 15 U.S.C. § 1681m(a).[1]

The FCRA encompasses the same definition of "adverse action" as given by the ECOA, *supra,* but also adds a "catch-all" provision which defines "adverse action" as "an action taken or determination that is ... (II) adverse to the interests of the consumer." 15 U.S.C. §§ 1681a(k)(1)(A) and (k)(1)(B)(iv)(II).

Based on the allegations made by the parties, whether the Defendants' actions constituted "adverse action" under the definition given to that term under the FCRA is a question of fact that cannot be determined on a Rule § 56 motion. The Defendants' motion for summary judgement based on alleged violations of the FCRA is denied.

A final pre-trial status conference of counsel in this case will be held before the Court on November 16, 2007 at 10:00 A.M.

SO ORDERED.

---

1. Section 1681m was amended in 1996 and no longer requires that the violating party be a "user of credit". However, even if there were such a requirement, the affidavits of Westchester Autos' finance manager and general sales manager leave no doubt that Westchester Autos is a "user of credit". *See Nor-*throp v. Hoffman of Simsbury, Inc., 134 F.3d 41, 49 (2d Cir.1997) ("An automobile dealership ... is clearly a party that in the ordinary course of business would have occasion to request and received credit reports from consumer reporting agencies").