**Francisco LOPEZ and Danielle Silvano, Plaintiffs,**

v.

**ML # 3, LLC, etc., Defendant.**

**Case No. 4:08cv579–RH/WCS.**

United States District Court,
N.D. Florida,
Tallahassee Division.

April 15, 2009.

David Howard Abrams, David H. Abrams Esq., Tallahassee, FL, for Plaintiffs.

Douglas John LaPointe, Cameron, Hodges, Coleman, LaPointe, & Wright, Orlando, FL, for Defendant.

## ORDER OF DISMISSAL

ROBERT L. HINKLE, Chief Judge.

This case arises from a car dealership's alleged participation in the submission of a car-loan application overstating the prospective buyer's income. The plaintiffs seek relief under state law and under the federal Credit Repair Organizations Act. The Act prohibits false statements with respect to a consumer's creditworthiness and creates a private right of action for violations. The defendant dealership has moved to dismiss on the ground that the Act is inapplicable to a transaction that has nothing to do with a credit-repair organization or service. I grant the motion.

I

The plaintiff Francisco Lopez visited a dealership owned by the defendant ML # 3, LLC, d/b/a First Team Mitsubishi ("First Team Mitsubishi"). Mr. Lopez decided to buy a 2006 Chrysler 300. First Team Mitsubishi advised Mr. Lopez that he would need someone to co-sign the loan application. Mr. Lopez enlisted the other plaintiff, Danielle Silvano. Ms. Silvano advised First Team Mitsubishi that she was working as a retail clerk at the Sports Authority.

First Team Mitsubishi prepared a loan application solely in Ms. Silvano's name and forwarded it to the Florida Commerce Credit Union. The application falsely stated that Ms. Silvano's annual income was $60,000. Mr. Lopez and Ms. Silvano (collectively "the plaintiffs") went to the credit union to complete the credit transaction. When Mr. Lopez learned that the loan was to be only in Ms. Silvano's name, he attempted to back out of the deal. But First Team Mitsubishi said he would lose the $1,000 down payment and would be liable for breach of contract. Ultimately, the plaintiffs went forward, with Ms. Silvano entering into the credit agreement in her name only.

## II

The plaintiffs brought this action under the federal Credit Repair Organizations Act (sometimes referred to in this order as "the Act") and state law. The Act prohibits false statements with respect to a "consumer's credit worthiness, credit standing, or credit capacity." 15 U.S.C. § 1679b(1). First Team Mitsubishi has moved to dismiss the claim under the Act on the ground that its various provisions—including the prohibition of false statements—apply only to credit-repair organizations and services. First Team Mitsubishi says that, as a matter of discretion, the court should decline to exercise supplemental jurisdiction over the state-law claims. The plaintiffs oppose the dismissal of the federal claim, but they take no issue with the assertion that, if the federal claim is dismissed, the court should decline to exercise jurisdiction over the state-law claims.

## III

The Credit Repair Organizations Act was adopted as part of the Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104–208, § 2451, 110 Stat 3009 (1996) (codified at 15 U.S.C. §§ 1679–1679j). The Act defines the term "credit repair organization" to mean

any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—

(i) improving any consumer's credit record, credit history, or credit rating; or

(ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i);

15 U.S.C. § 1679a(3)(A). The Act excludes nonprofit organizations, creditors, and depository institutions from the definition of a credit repair organization. 15 U.S.C. § 1679a(3)(B).

Congress explicitly set forth the Act's purposes in the statutory text:

(b) Purposes

The purposes of this subchapter are—

(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

(2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b). Nothing in these purposes suggests that Congress intended the Act to reach beyond credit-repair organizations or services.

The Act does, however, include prohibitions that, if read out of context, could apply to circumstances having no connection whatever to credit-repair organizations or services:

(a) In general

*No person* may—

  (1) make any statement, or counsel or advise any consumer to make any statement, which is untrue or misleading (or which, upon the exercise of reasonable care, should be known by the credit repair organization, officer, employee, agent, or other person to be untrue or misleading) with respect to any consumer's credit worthiness, credit standing, or credit capacity to—

    (A) any consumer reporting agency (as defined in section 1681 a(f) of this title); or

    (B) any person—

    (i) who has extended credit to the consumer; or

    (ii) to whom the consumer has applied or is applying for an extension of credit;

15 U.S.C. § 1679b (emphasis added).

First Team Mitsubishi was not a credit-repair organization, and it did not offer services for the purpose of improving the credit record, credit history, or credit rating of the plaintiffs or anyone else. The plaintiffs do not allege otherwise. The question presented thus is whether the Act's prohibitions apply without limitation to all persons, or are instead limited to the credit-repair context.

The Eleventh Circuit has not addressed the question, and there is disagreement among the courts that have. *Compare Henry v. Westchester Foreign Autos, Inc.,* 522 F.Supp.2d 610, 614 (S.D.N.Y.2007) (granting summary judgment for a corporation because it was "not a credit repair organization or associated with any such organization"), *Sannes v. Jeff Wyler Chevrolet, Inc.,* No. C–1–97–930, 1999 WL 33313134, at *4 (S.D.Ohio Mar. 31, 1999) ("The Court does not believe that Congress intended to include auto dealerships, who arrange for purchase financing ancillary to their primary business of selling and leasing motor vehicles, in the category

of credit repair organizations."), *and In re Wright,* No. 05–40829, 2007 WL 1459475, at *11 (Bkrtcy.N.D.Ala. May 16, 2007) ("When it enacted CROA, the focus of Congress was on the credit repair industry, not enacting a federal cause of action creating liability for every person guilty of making defamatory statements about a consumer's creditworthiness."), *with Parker v. 1–800 Bar None, a Financial Corp.,* No. 01 C 4488, 2002 WL 215530, at *5 (N.D.Ill. Feb. 12, 2002) (holding that "regardless of whether Gateway is a credit repair organization under the act, section 1679b(a) applies to it as well"), *and Bigalke v. Creditrust Corp.,* 162 F.Supp.2d 996, 999 (N.D.Ill.2001) ("section 1679b(a) applies to 'person[s]' which is a broader definition than that of a credit repair organization").

█ The better view is that the Act applies only in the context of credit-repair organizations and services. The plaintiffs' broader reading would create a federal cause of action for any false statement in a credit application—with no requirement for an effect on commerce and no other federal jurisdictional peg. This would be a remarkable and constitutionally-suspect expansion of federal regulation that undoubtedly would surprise the members of Congress who voted for the Act; they presumably believed the Act met the requirement for a jurisdictional peg because one was included in the definition of a "credit repair organization." *See* 15 U.S.C. § 1679a(3)(A). Moreover, this expansion of federal regulation would bear no relationship to the Act's explicitly stated purposes—to ensure the provision of adequate information to "prospective buyers of the services of credit repair organizations" and "to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). Properly

construed, the Act will not bear this reading.

It is true, of course, that the Act says that "[n]o person" may perform the prohibited acts. Congress undoubtedly knows the difference between a "credit repair organization" and a "person" and presumably used the broader term advisedly. It apparently did so, however, not to expand the Act beyond the credit-repair context, but to ensure that a person who made a false statement *in that context* would not escape liability based on the person's relationship to the credit-repair organization or based on the person's role in the transaction at issue. The canons that a word in a statute should be given its plain meaning and that different words in a statute ordinarily should be given different meanings do not require a broader reading of this statute.

Moreover, a statute should be interpreted consistently with its explicitly stated purposes, even when a canon of construction might otherwise be thought to point in a different direction:

> However well [rules of statutory construction] may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy.

*SEC v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 350–351, 64 S.Ct. 120, 88 L.Ed. 88 (1943). Here the Act's explicit purposes deal only with credit-repair organizations and services. Because the plaintiffs' claim has nothing to do with this kind of organization or service, the claim falls outside the Act's purposes.

In addition, statutes must be read as a whole:

> Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because ... only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.

*United Sav. Ass'n v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citations omitted). When all the Act's provisions are considered collectively, they support the view that the Act's prohibitions apply only in the credit-repair context. That the Act's explicit purposes relate only to credit-repair organizations and services is just the beginning. The congressional findings relate to credit-repair services, 15 U.S.C. § 1679(a), the disclosures mandated by the Act apply only to credit-repair organizations, *id.* at § 1679c, the Act's record-retention requirements apply only to credit-repair organizations, *id.* at § 1679c(c), and the Act's limitations on contracts apply only to contracts for credit-repair services, *id.* at § 1679d-e. Similarly, some of the Act's damages provisions make sense only if the defendant is a credit-repair organization. Thus the Act allows recovery of "any amount paid ... to the credit repair organization," 15 U.S.C. § 1679g(a)(1)(B), and authorizes a court to consider, in deciding whether to impose punitive damages, "the frequency and persistence of noncompliance by the credit repair organization." *Id.* at 1679g(b)(1). These provisions all suggest that the scope of the Act should be limited to credit-repair organizations and services.

Finally, even viewed in isolation, the "prohibited practices" section of the Act, though not a model of clarity, is at least susceptible to this reading. Although its

introductory words are broad—"[n]o person may"—the section goes on to impose liability for statements that "should be known by *the credit repair organization,* officer, employee, agent, *or other person* to be untrue or misleading." 15 U.S.C. § 1679b(a)(1) (emphasis added). When the items in the list are read *in pari materia,* the reference to other "person" means another person connected with a credit-repair organization—just as the references to an "officer, employee, [or] agent" means an "officer, employee, [or] agent" of a credit-repair organization.

In sum, when the Act is considered as a whole and in light of its explicitly stated purposes, it is clear that it applies only in the credit-repair context. The plaintiffs have failed to state a claim on which relief can be granted under the Act.

## IV

The dismissal of the claim under the Act leaves pending only state-law claims over which this court would not have original jurisdiction. The plaintiffs and the defendant are all citizens of Florida, and the plaintiffs assert no other federal claims.

A district court may "decline to exercise supplemental jurisdiction over a claim" if the "court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c) & (c)(3); *see Baggett v. First Nat'l Bank of Gainesville,* 117 F.3d 1342, 1352 (11th Cir.1997) (noting that under § 1367 a district court "has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction"). When, as here, a district court dismisses at the outset the claims over which it has original jurisdiction, the court ordinarily should also dismiss the claims over which it has only supplemental jurisdiction. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.") (footnote omitted). As a matter of discretion, I decline to exercise supplemental jurisdiction over the plaintiffs' state-law claims.

## V

For these reasons,

IT IS ORDERED:

1. The defendant's motion to dismiss (document 5) is GRANTED.

2. The clerk must enter judgment stating, "The plaintiffs' claim under the Credit Repair Organizations Act is dismissed with prejudice. The plaintiffs' state-law claims are dismissed without prejudice on jurisdictional grounds."

3. The clerk must close the file.